UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

VANESSA WEST

CIVIL ACTION

VERSUS

NO. 17-1640-BAJ-EWD

RED FROG EVENTS, LLC, ET AL.

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 24, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

VANESSA WEST

                                          CIVIL ACTION

VERSUS

                                          NO. 17-1640-BAJ-EWD

RED FROG EVENTS, LLC, ET AL.

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand[1] filed by plaintiff, Vanessa West ("Plaintiff"). The Motion to Remand is opposed[2] by defendant Red Frog Events, LLC ("Red Frog"). For the reasons set forth herein, the undersigned *sua sponte* recommends[3] that this suit be **REMANDED** to the 20th Judicial District Court for the Parish of West Feliciana, State of Louisiana based on Red Frog's failure to meet its burden of proving, by a preponderance of the evidence, that the amount in controversy likely exceeds the jurisdictional threshold necessary to exercise federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

In light of this recommendation, the undersigned additionally recommends that the Motion to Remand[4] be **DENIED AS MOOT**.[5]

## I.      Background

This is a civil action involving claims for damages based upon the injuries allegedly sustained by Plaintiff when a dome-shaped obstacle (referred to as the "Diesel Dome" or the

---

[1] R. Doc. 13.

[2] R. Doc. 20.

[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016). Because the undersigned similarly recommends remand of this action, the undersigned has issued a Report and Recommendation.

[4] R. Doc. 14.

[5] In the event this Recommendation is *not* adopted, it is recommended that this matter be referred back to the undersigned for an analysis of the improper joinder argument.

"Dome") collapsed during a "Warrior Dash" race held on October 8, 2016.[6]    On or about September 28, 2017, Plaintiff filed a Petition for Damages against Red Frog, Peterson Builders, Inc. ("Peterson"), North South Renovations, Inc. ("North South"), and the Parish of West Feliciana ("West Feliciana") in the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana.[7]

The matter was removed to this Court by Red Frog on November 9, 2017, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).[8]  Per its Notice of Removal, Red Frog asserts that, with the exception of West Feliciana, the parties to this action are completely diverse.[9]  With respect to West Feliciana, Red Frog avers that the Parish was improperly joined for the sole

---

[6] R. Doc. 1-2 at p. 25, ¶ III.

[7] R. Doc. 1-2, pp. 24-28.  In addition to these defendants, the Petition also names ABC Insurance Company, DEF Insurance Company, and GHI Insurance Company.  In its Notice of Removal, Red Frog correctly points out that when determining whether a civil action is removable on the basis of diversity jurisdiction, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b).  *See*, R. Doc. 1, ¶ 8.

[8] R. Doc. 1 at ¶ 8.  In its Notice of Removal, Red Frog asserts that that the removal was timely because it was filed "within 30 days of October 10, 2017, which is the date it received Citation and the Plaintiffs' Petition for Damages…and within the 1 year period set forth in 28 U.S.C. § 1446(c)."  R. Doc. 1, ¶ 29.  28 U.S.C. § 1446(b)(1) provides, *inter alia*, that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…."  With respect to the thirty day period which is triggered from the defendant's receipt of the initial pleading, as provided in 28 U.S.C. § 1446(b)(1), the Fifth Circuit has provided a bright line rule that "the thirty-day removal period under the first paragraph is triggered only where the initial pleading 'affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.'"  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir.2013) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir.1992)).  Pursuant to *Chapman*, if a plaintiff wants the thirty day period to run from the defendant's receipt of the initial pleading, a plaintiff should place in that pleading "a specific allegation that damages are in excess of the federal jurisdictional amount."  *Chapman*, 969 F.2d at 163.  It is undisputed that Plaintiffs' initial pleading does not contain a specific allegation that damages are in excess of the federal jurisdictional amount.  Accordingly, the thirty day period for removing the action was not triggered by service of the initial pleading.  *See*, *Vatter v. Walker*, Civil Action No. 17-171, 2017 WL 3498868, at * 3 (M.D. La. July 10, 2017) ("It is undisputed that the initial pleading in this action does not contain a specific allegation that damages are in excess of the federal jurisdictional amount.  Accordingly, the 30-day period for removing the action was not triggered by service of the initial pleading.").

[9] Red Frog avers that it is a limited liability company with one member, Joseph Reynolds, who is a citizen of Illinois. R. Doc. 1, ¶ 11.  Red Frog further alleges that Peterson is a limited liability company whose sole member is a citizen of North Carolina and that North South is incorporated in North Carolina with its principal place of business in North Carolina, R. Doc. 1, ¶¶ 12 & 13.

purpose of defeating diversity jurisdiction.[10]  On December 8, 2017, Plaintiff filed a Motion to Remand[11] arguing that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because West Feliciana is a properly joined non-diverse defendant.[12]

Thereafter, the undersigned *sua sponte* raised the issue of whether the amount in controversy requirement for federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 was satisfied, and ordered Red Frog to submit a memorandum and supporting evidence specifically addressing whether the requisite amount in controversy was met.[13]  Red Frog filed a Supplemental Memorandum in Support of Removal on July 2, 2018.[14]  Although this Court's *sua sponte* Order also ordered Plaintiff to file either a memorandum and supporting evidence regarding the amount in controversy requirement of 28 U.S.C. § 1332 or a supplemental memorandum in support of Plaintiff's pending Motion to Remand, Plaintiff failed to timely file either.

Because the undersigned finds that Red Frog has not met its burden of establishing by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional threshold, the undersigned *sua sponte* recommends remand on that basis, and further recommends that Plaintiffs' Motion to Remand based upon the joinder of West Feliciana (a non-diverse defendant) be denied as moot.

---

[10] R. Doc. 1, ¶ 14.

[11] R. Doc. 13.

[12] Plaintiffs' Motion to Remand does not address the amount in controversy issue.

[13] R. Doc. 57.

[14] R. Doc. 58.

## II.    Law and Analysis

### A.  Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[15]  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[16]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[17]  In removed actions, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.[18]  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[19]  The removing party has the burden of proving federal diversity jurisdiction.[20]  Remand is proper if at any time the court lacks subject matter jurisdiction.[21]

### B.  Procedural History Relevant to the Amount in Controversy

In her Petition, Plaintiff alleges that she "sustained serious injuries to various parts of her body" when the Diesel Dome collapsed.[22]  Plaintiff further alleges that she "suffered bodily

---

[15] 28 U.S.C. § 1441(a).

[16] 28 U.S.C. § 1332(a)-(a)(1).

[17] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[18] *Coury v. Prot*, 85 F.3d 244, 248-289 (5th Cir. 1996) (citation omitted).  No party is arguing that there was any change in jurisdictional facts between the filing of the suit in state court and the removal of the case to this court.

[19] *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007).

[20] *Garcia v. Koch Oil Co. of Tex. Inc*., 351 F.3d 636, 638 (5th Cir. 2003).

[21] *See*, 28 U.S.C. § 1447(c).

[22] R. Doc. 1-2, p. 25, ¶ 3.

injuries, pain and suffering, mental anguish, loss of enjoyment of life, medical expenses and permanent disability, all of which warrant an award in her favor for compensatory damages."[23]

In its Notice of Removal, Red Frog admits that "Plaintiff does not plead facts relative to her injuries."[24]  However, it points out that Plaintiff alleged "serious injuries to various parts of her body" in her Petition and that during pre-suit discussions, "Plaintiff reported that she sustained the following, specific injuries as a result of the obstacle collapse: (1) a concussion, for which she is currently treating one year later, and for which she is taking medications; (2) various soft tissue injuries to thumb, hand, neck, and knee, for which she is still treating over one year later; and (3) lost wages from her athletic training job because she cannot work weekends."[25]  In addition to providing citation to various Louisiana cases awarding general damages for concussions, soft tissue injuries, and emotional distress,[26] Red Frog points out that Plaintiff failed to include an allegation regarding the federal amount in controversy pursuant to Louisiana Code of Civil Procedure article 893 in her Petition[27] and "declined to enter" into a stipulation that her alleged damages were less than $75,000.00.[28]

In its Supplemental Memorandum in Support of Removal, Red Frog "concedes that it is not facially apparent from Plaintiff's Petition that damages exceed $75,000.000."[29]  However, Red Frog contends that "[t]he facts in controversy supplied by the Notice of Removal, Petition, and other evidence presented herein shift the burden to Plaintiff to establish that there is no legal

---

[23] R. Doc. 1-2, p. 27, ¶ V.

[24] R. Doc. 1, ¶ 17.

[25] R. Doc. 1, ¶ 18.

[26] R. Doc. 1, ¶ 19, n. 12.

[27] R. Doc. 1, ¶ 17.

[28] R. Doc. 1, ¶ 20.

[29] R. Doc. 58, p. 2.

certainty that she can recover damages in excess of $75,000.00."[30]  Red Frog argues that "[a]s evidenced by (1) the Petition's lack of the required federal jurisdictional amount allegation; (2) Plaintiff's declining to stipulate that she would not seek damages in excess of $75,000.00; and (3) the specific facts provided by the Notice of Removal, and herein, it is clear that Plaintiff intends to seek damages in excess of $75,000.00."[31]  Additionally, Red Frog argues that Plaintiff's failure to raise the amount in controversy in her Motion to Remand "is yet another factor suggesting that [Plaintiff] will seek damages in excess of $75,000.00…."[32]

### C.  Red Frog Has Failed to Established, By a Preponderance, that the Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.[33]  When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.[34]  The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[35]  Once a removing defendant has established, by a preponderance, that the amount in controversy exceeds the federal jurisdictional

---

[30] R. Doc. 58, p. 1.

[31] R. Doc. 58, p. 3.

[32] R. Doc. 58, p. 3.  Presumably, Red Frog would also argue that Plaintiff's failure to file a supplement to her Motion to Remand following the court's *sua sponte* Order is additional evidence that the amount in controversy requirement is satisfied.  Plaintiff's failure to address the amount in controversy question in either her Motion to Remand or a supplemental filing does not affect Red Frog's initial burden of proving that the amount in controversy likely exceeds the required jurisdictional amount.

[33] La. C.C.P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[34] *Luckett*, 171 F.3d at 298 (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).

[35] *Luckett*, 171 F.3d at 298 (quoting *Allen v. R&H Oil & Gas Co.*, 73 F.3d 1326, 1335 (5th Cir. 1995)).

amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[36]

   Although Red Frog asserted in its Notice of Removal that "it is apparent from the face of Plaintiff's Petition for Damages that the amount in controversy…exceeds this Court's $75,000.00 jurisdictional amount,"[37] it concedes in its Supplemental Memorandum that the requisite amount in controversy is not facially apparent.[38]   Accordingly, the undersigned considers whether Red Frog has met its burden of establishing that the amount in controversy likely exceeds $75,000.00 based on summary judgment-type evidence.   Red Frog asserts that numerous factors support a finding that the requisite amount in controversy is met here.

---

[36] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).  Because Red Frog has not met its initial burden, Plaintiff is not required to establish to a legal certainty that the claim is really for less than the required jurisdictional amount.

[37] R. Doc. 1, ¶ 16.

[38] R. Doc. 58, p. 2.  In its Supplemental Memorandum, Red Frog relies heavily on *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000).  In *Gebbia*, the Fifth Circuit found it was facially apparent that plaintiff's damages likely exceeded $75,000 where plaintiff alleged injuries to her wrist, left knee and patella, and upper and lower back and sought damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement. 233 F.3d at 881. In so finding, the *Gebbia* court explained that the plaintiff's allegations "support a substantially larger monetary basis" than the allegations in *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999) (amount in controversy not satisfied where plaintiff allegedly "suffered bodily injuries and damages including but not limited to a severely injured shoulder, soft-tissue injuries throughout her body, bruises, abrasions and other injuries….").  *Gebbia*, 233 F.3d at 883.  Red Frog argues that "[h]ad Plaintiff pleaded that she sustained a concussion with residual effects, and soft tissue injuries to her neck, back, thumb, and knee in her Petition, it would have been similar to the facially-apparent petition from *Gebbia*."  R. Doc. 58, p. 5.  Unlike *Gebbia*, Plaintiff did not allege with any specificity what injuries she sustained and, as recognized by Red Frog, the amount in controversy is not facially apparent.  Although Plaintiff here seeks damages for "permanent disability," this boilerplate category of damage is insufficient to support a finding that the amount in controversy is satisfied without any specific allegation regarding her injuries.  *See*, *Touchet v. Union Oil Co. of California*, Civ.A. 01-2394, 2002 WL 465167, at * 2 (E.D. La. March 26, 2002) ("Although defendant suggests that plaintiff's allegation of 'permanent disability' in his petition substantially increases the amount in controversy, defendant has not offered any evidence suggesting the existence or extent of disability…."); *Kelly v. Dolgencorp, LLC*, Civil Action No. 10-879, 2010 WL 4484359, at * 2 (W.D. La. Nov. 1, 2010) ("Defendants note that Plaintiff seeks damages for permanent disability, lost wages, and medical expenses and that those damages are enough to demonstrate that the amount in controversy exceeds $75,000.  However, in those cases, the plaintiff alleged specific injuries.") (internal citation omitted); *Guidry v. Murphy Oil USA, Inc.*, Civil Action No. 12-559, 2013 WL 4542433, at * 5 (M.D. La. Aug. 27, 2013) (distinguishing *Gebbia* based on the fact that plaintiff in *Gebbia* "claimed injuries that would permanently affect their normal daily lives.").

First, Red Frog relies on cases addressing general damage awards "for similar injuries."[39] Although Red Frog provides citation to numerous cases, it does not provide any medical records from Plaintiff or other discovery responses evidencing Plaintiff's injuries.[40] Instead, Red Frog relies on telephone communications between Red Frog's counsel and Plaintiff's counsel and an email from Red Frog's counsel confirming based on those conversations that "the best of what we know so far relative to [Plaintiff's] injuries" is that Plaintiff sustained a concussion for which she is still treating and is currently on medication; soft tissue injuries to her thumb, hand, neck, and knee; and that Plaintiff "has been unable to work weekends as an athletic trainer since the incident, which has resulted in lost wages over the past year."[41] Without any additional information regarding Plaintiff's actual injuries, it is impossible for this court to determine whether the cases cited by Red Frog involve general damage awards for analogous injuries.[42]

With regard to soft tissue injuries, Red Frog relies on *Millican v. Ponds*[43] for its assertion that Plaintiff's damages "are likely to exceed $75,000.00 for just the soft tissue neck and back

---

[39] *See*, R. Doc. 1, ¶ 19, n. 12.

[40] There is no indication regarding the amount of Plaintiff's lost wage claim. It does not appear that Red Frog propounded any discovery prior to removal of this suit regarding either Plaintiff's injuries or her claimed lost wages. *See*, R. Doc. 58-1, ¶ 6 (Declaration of Red Frog's counsel) (stating that during telephone conversations with Plaintiff's counsel "Red Frog requested medical records and employment records that supported Plaintiff's alleged injuries. To date, Red Frog has received no medical records and employment records from Plaintiff.").

[41] R. Doc. 58-2.

[42] Red Frog argues in its Supplemental Memorandum that it has presented this court "with specific elements of Plaintiff's injuries that are substantially similar" to those set out in *Broadway v. Wal-Mart Stores, Inc.*, Civ.A. 00-1893, 2000 WL 1560167 (E.D. La. Oct. 18, 2000). R. Doc. 58, p. 6. In *Broadway*, plaintiff's answers to interrogatories provided that she suffered from several herniated discs and had "limited use of her left arm and persistent soreness of her head, neck, and left arm resulting from the incident." 2000 WL 1560167, at * 2. The court found that "it is more likely than not that the plaintiff has suffered sufficiently severe injuries to support an amount in controversy in excess of $75,000." *Id*. Here, and in contrast to *Broadway*, there are no discovery responses to provide detail regarding Plaintiff's injuries, and Red Frog has not alleged that Plaintiff sustained a herniated disc (as opposed to soft tissue injuries). Moreover, this Court has recently explained that "[s]everal recent federal court decisions have held that the removing defendant did not meet its burden of providing [sic] the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal." *Cole v. Mesilla Valley Transportation*, Civil Action 16-841, 2017 WL 1682561, at * 5 (M.D. La. March 15, 2017) (collecting cases).

[43] 763 So.2d 1188 (La. App. 1. Cir. June 23, 2000).

injury portion of her claim."[44]  In *Millican*, the court affirmed an award of $42,500.00 in damages for soft tissue injuries despite finding the award "relatively high" where plaintiff was "violently thrown about the cab of her car and suffered a laceration of her left arm, numerous bruises and abrasions on the left side of her torso and head, recurring headaches, and a whiplash injury from which she endured six months of pain."[45]  Red Frog reasons that Plaintiff here has suffered from soft tissue pain in her neck and back for over one year and therefore, based on *Millican*, Plaintiff's damages likely exceed the jurisdictional threshold.  Notwithstanding Red Frog's reliance on *Millican*, other Louisiana cases – including some cited by Red Frog – support a lower award for soft tissue injuries.[46]

Additionally, Red Frog contends that "at least two Louisiana cases from the appellate circuit from which this case was removed awarded $75,000.00 to a plaintiff that sustained a concussion, experienced residual effects, and was treated for these residual effects."[47]  In the first of the cases cited by Red Frog for this proposition, *Frazer v. St. Tammany Parish School Board*,[48] a student was awarded $75,000 in general damages for injuries sustained during a beating by four other students that left him bedridden for three to four days, resulted in an extreme tremor in both

---

[44] R. Doc. 58, p. 7.

[45] 762 So. 2d at 1192.

[46] *See, Moraus v. Frederick*, 916 So. 2d 474 (La. App. 3 Cir. Nov. 2, 2005) (affirming damage award for soft tissue injuries to plaintiff's upper arm, left shoulder and neck averaging $2,625.00 per month).  Plaintiff's Petition seeks damages arising out of the October 8, 2016 Warrior Dash.  Relying on *Moraus*, an award of $2,625.00 per month for thirteen months of soft tissue injury would total $34,125.00.  *See also, Williams v. State of Louisiana*, 684 So.2d 1018, 1023 (La. App. 1 Cir. 1997) (affirming $25,000 general damage award to plaintiff for soft tissue injuries to neck and back, muscular injury to shoulder, and "snapping scapula syndrome."); *Terry v. Sutherlands Lumbar Co.*, 742 So.2d 756, 758 (La. App. 2 Cir. 1999) (affirming $7,500 general damage award where plaintiff was diagnosed with a mild sprain of left ankle and knee and sought treatment for approximately four months).  *Compare, Beoh v. Watkins*, 646 So.2d 513, 516 (La. App. 4 Cir. 1995) (awarding plaintiff $75,000 in general damages where he suffered injuries to both legs, and injury to left leg required wire stitches and plaintiff was forced to use crutches and could not put weight on ankle for period of time).  Red Frog cites *Williams*, *Terry*, and *Beoh* in its Notice of Removal.  R. Doc. 1, ¶ 19, n. 12.

[47] R. Doc. 58, p. 7.

[48] 774 So.2d 1227 (La. App. 1 Cir. 2000)

hands, blurriness and dizziness, severe headaches, post-traumatic stress disorder, and left frontal lobe deficits.[49]  In the second case cited by Red Frog, *Hoyt v. State Farm Mutual Auto. Ins. Co.*,[50] the court awarded $15,000 in general damages for the closed-head injury portion of plaintiff's claim where plaintiff was thrown from the bed of a truck and "struck his head on either the pavement or on the windshield of an oncoming vehicle," "was awake but non-responsive to questions or commands, and was exhibiting slow side-to-side eye oscillation, and spontaneous movement of all extremities" following the accident, and remaining at Charity Hospital for five days.[51]  Again, without any additional information regarding Plaintiff's injuries here, it is impossible to determine whether *Frazer* or *Hoyt* are analogous.[52]  As recently noted by the Eastern District, "the defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000."[53]  The cases cited by Red Frog "merely exemplify amounts in damages within the realm of possibilities that Plaintiff could recover, and to that end, '[t]he Fifth Circuit has explained a 'could well' standard sounds more like a 'possibility' standard of proof, rather than a 'more likely than not' standard."[54]

---

[49] *Frazer*, 774 So.2d at 1235.

[50] 623 So.2d 651 (La. App. 1 Cir. 1993).

[51] *Hoyt*, 623 So.2d at 660.

[52] And, in any event, the undersigned also notes that despite the seemingly severe injuries in *Hoyt*, general damages for the close-head injury were $15,000.00.

[53] *Medina v. Johnstone*, Civil Action No. 17-6351, 2017 WL 3911793, at * 4 (E.D. La. Sept. 7, 2017) (citing *De Aguilar*, 47 F.3d at 1412).

[54] *Id.* (internal citations omitted).  Although not raised by Red Frog in its Supplemental Memorandum, Red Frog also cited *Wilkerson v. Kansas City Southern Railway*, 772 So.2d 268 (La. App. 2 Cir. 2000), in its Notice of Removal with respect to emotional distress damages.  R. Doc. 1, ¶ 19, n. 12.  Assuming Red Frog provided this citation based on Plaintiff's assertion that she seeks to recover compensatory damages for "mental anguish," R. Doc. 1-2, p. 27, ¶ 5, there is no indication that *Wilkerson* is similar to this case.  In *Wilkerson*, mental anguish awards of $125,000 and $150,000 were affirmed where decedent's parents were the first to arrive on the scene of an accident and found their daughter with "massive injuries" following an accident in which her vehicle had been broadsided by a train.

In addition to relying on case law purporting to establish the jurisdictional amount in controversy threshold for "similar" injuries, Red Frog also asserts that Plaintiff's failure to stipulate that her claim is less than $75,000 and her failure to include a jurisdictional allegation pursuant to Louisiana Code of Civil Procedure article 893 (A)(1) support a finding that the amount in controversy requirement is met.

Louisiana Code of Civil Procedure article 893(A)(1) provides that "[n]o specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand.  The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish…the lack of jurisdiction of federal courts due to insufficiency of damages…a general allegation that the claim exceeds or is less than the requisite amount is required."  This Court has held that a "plaintiffs' failure to follow La. C.C.P. art. 893(A)(1)'s mandate, while entitled to some consideration, in and of itself is not determinative of the amount in controversy."[55]  While Plaintiff's failure to include an allegation pursuant to La. C.C.P. 893(A)(1) is a factor considered by the undersigned when determining whether Red Frog has met its burden of establishing that the amount in controversy is met, it cannot, without more, carry Red Frog's burden of establishing this court's subject matter jurisdiction.

With respect to Plaintiff's failure to stipulate, this court has found that it "may consider the Plaintiff's refusal to sign the stipulation [that the amount in controversy was less than $75,000] as

---

[55] *Weber v. Stevenson*, Civil Action No. 07-5595, 2007 WL 4441261, at * 4 (M.D. La. Dec. 14, 2007).  *See also*, *Haydel v. State Farm Mut. Auto. Ins. Co.*, CIVA 07-939, 2008 WL 2781472, at * 5 (M.D. La. July 10, 2008) ("This Court has held that the failure to make such an allegation is not, in and of itself, determinative of the amount in controversy; however, such failure is entitled to 'some consideration' in making the jurisdictional determination.") (citing *Weber*); *Machinery Paver Sales, Inc. v. Bomag Americas, Inc.*, Civil Action No. 06-697, 2007 WL 2900489, at * 3 (M.D. La. Oct. 1, 2007) ("Furthermore, the plaintiff does not include any allegation in its petition, as required by Louisiana Code of Civil Procedure article 893(A)(1), that its damages were less than the requisite amount to assert federal jurisdiction.  While likewise not determinative, the absence of such an allegation is another factor indicative of a sufficient amount in controversy.").

a factor in determining whether Defendant has met its burden of proof."[56]  Although Red Frog does not attach any written correspondence from Plaintiff's counsel declining to stipulate, Red Frog does submit a Declaration executed by its own counsel stating that "Red Frog requested that Plaintiff stipulate that her alleged damages were below $75,000.00 in order to obviate the need for removing this action.  Plaintiff declined."[57]  In light of Red Frog's counsel's sworn declaration stating that Plaintiff declined to stipulate, the undersigned considers such failure to stipulate to be a factor weighing in favor of finding the amount in controversy requirement of 28 U.S.C. § 1332 is met.  However, this Court has recently explained that a plaintiff does "not have a legal obligation to sign Defendant's stipulation 'and, therefore, his refusal to do so cannot [alone] be considered proof by a preponderance of the evidence that the case is worth more than $75,000.'"[58]  The refusal to stipulate is "but one factor for the court to consider."[59]  Here, because there is no specific information regarding Plaintiff's medical expenses, lost wages, or other damages, and because the cases relied upon by Red Frog to support this removal are of questionable relevance, the undersigned finds that Plaintiff's "refusal to stipulate to the amount of damages, while given some weight," is not a determinative factor in determining the amount in controversy in this action.[60]

---

[56] *Cage v. Hobby Lobby Stores, Inc.*, Civil Action No. 14-58, 2015 WL 803120, at * 4 (M.D. La. Feb. 25, 2015) (citing *Lipford v. Boehringer Ingelheim Pharm., Inc.*, No. 13-2858, 2014 WL 458359, at * 5 (W.D. La. Feb. 4, 2014)).  *See also*, *Riley v. Southern Fidelity Ins. Co.*, Civil Action No. 11-1482, 2011 WL 3567515, at * 5 (E.D. La. Aug. 12, 2011) ("'[A] failure to stipulate is only one factor to consider in determining whether a defendant has met its burden' regarding the amount in controversy.") (citing *Meza v. Best Western International, Inc.*, Civil Action No. 10-2623, 2010 WL 5146524, at * 2 n. 3 (E.D. La. Dec. 8, 2010) & *Carbajal v. Caskids Oil Operating Co.*, No. 05-5966, 2006 WL 1030392, at *3 (E.D. La. Apr. 18, 2006)).

[57] R. Doc. 58-1, ¶ 7.  In addition, Red Frog attaches email correspondence from its counsel to Plaintiff's counsel asking plaintiff to advise "if you are willing to stipulate to damages of less than $75,000 to keep this matter in state court…." R. Doc. 58-2.

[58] *Cole*, 2017 WL 1682561, at * 6 (quoting *Lipford v. Boehringer Ingelheim Pharm., Inc.*, No. `3-2858, 2014 WL 458359, at * 5 (W.D. La. Feb. 4, 2014)).

[59] *Id.*

[60] *Id.*

13

Because there are factors here that weigh in favor of remand and factors that weigh against, the doubt is resolved in favor of remand.[61]  Because Red Frog has not met its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs, the undersigned *sua sponte* recommends that this suit be remanded to the state district court.

## RECOMMENDATION

It is the recommendation of the magistrate judge that this matter be **REMANDED** to the state district court for lack of subject matter jurisdiction, specifically, removing defendant's failure to meet its burden to prove, by a preponderance of the evidence, that the amount in controversy required to exercise jurisdiction pursuant to 28 U.S.C. § 1332 is met.

---

[61] *Gasch*, 491 F.3d at 281-82.  As explained herein, there is no specific information about medical expenses incurred to date, future medical expenses anticipated or lost wages that would assist in determining whether the amount in controversy requirement is met.  Under Fifth Circuit precedent, when the state court petition does not affirmatively reveal on its face that the plaintiff is seeking in excess of the minimum jurisdictional amount, the thirty day period to remove does *not* run from defendant's receipt of the initial pleading.  *See*, *supra*, n. 8 (citing *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) and *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir.1992)).  "Protective removals" are disfavored.  *See*, *e.g.*, *Evans v. Wal-Mart Stores, Inc.*, No. Civ.A. 04-1378, 2004 WL 1488599, at * 3 (E.D. La. June 30, 2004) ("the *Chapman* decision was based upon the desire to avoid 'protective removals' by defendants faced with equivocal pleadings.").  "If the removing defendant does not have facts sufficient to support removal when the original petition is received, it is the removing defendant's responsibility to discovery those facts *before* effecting removal."  *Bonvillian v. National Liability & Fire Ins. Co.*, Civil No. 16-1708, 2017 WL 892311, at * 3 (W.D. La. Feb. 1, 2017).  "This is precisely why the 'other paper' removal rule exists, to ensure that removals will not be filed 'before their factual basis can be proven [by the removing defendant] by a preponderance of the evidence....'" *Id*. (citing *Bosky v. Kroger Texas, L.P.*, 288 F.3d 208, 211 (5th Cir. 2002)).  Here, Plaintiff filed suit on September 28, 2017.  Red Frog was served on October 10, 2017 with a pleading that did not affirmatively reveal on its face that the federal jurisdictional amount was met, yet Red Frog removed this matter on November 9, 2017.  Red Frog had more than sufficient time under 28 U.S.C. § 1442(c) to propound limited discovery in state court regarding the amount in controversy (such as a request for admission) prior to removal.  *See*, *Freeman v. Witco, Corp.*, 984 F. Supp. 443 (E.D. La. 1997) (amount in controversy requirement satisfied where the plaintiff denied in response to request for admission that she would not seek damages or execute on any judgment rendered in her favor against any of the defendants in excess of $75,000); *Ives v. Kroger Texas L.P.*, No. 17-11, 2017 WL 1321000 (N.D. Tex. Mar. 17, 2017) (amount in controversy requirement satisfied where the plaintiff admitted that she was seeking damages in excess of $75,000), report and recommendation adopted, 2017 WL 1296598 (N.D. Tex. Apr. 7, 2017); *Garcia v. State Farm Lloyds*, No. 08-829, 2009 WL 10669517 (W.D. Tex. Feb. 3, 2009) (amount in controversy requirement satisfied where the plaintiff denied that she was seeking an amount exceeding $75,000).  Red Frog's failure to obtain sufficient information to establish that the amount in controversy is met is fatal to its removal in this case.

14

In light of this recommendation, the undersigned additionally recommends that the Motion to Remand[62] be **DENIED AS MOOT**.[63]

Signed in Baton Rouge, Louisiana, on July 24, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[62] R. Doc. 13.

[63] In the event this recommendation is not adopted, the undersigned recommends that the Motion to Remand be referred back to the undersigned for an analysis of the improper joinder issue.